**INDIA BREWING, INC., Plaintiff,**

v.

**MILLER BREWING CO., Defendant.**

**No. 05 C 0467.**

United States District Court,
E.D. Wisconsin.

July 13, 2006.

Charles P. Graupner, Daniel J. Vaccaro, Nathaniel Cade, Jr., Michael, Best & Friedrich LLP, Milwaukee, WI; Jason L. Peltz, Philip S. Beck, Reeghan Raffals, Bartlit, Beck, Herman, Palenchar & Scott LLP, Chicago, IL, for Plaintiff.

Cristina D. Hernandez–Malaby, Daniel E. Conley, Eric J. Van Vugt, Nathan R. Mathews, Catherine R. Grogan, Quarles & Brady LLP, Milwaukee, WI; Joseph M. Rebein, Mark C. Tatum, Michael S. Cargnel, Shook, William R. Sampson, Hardy & Bacon LLP, Kansas City, MO, Peter M. Henk, Houston, TX, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL

CLEVERT, District Judge.

The claims and counterclaims in this case allege breach of contract, fraudulent inducement, and negligent misrepresentation. (*See* Compl. at 8–9; First Am. Answer & Counterclaim at 19–20.) On June 2, 2006, plaintiff, India Brewing, Inc. (IBI), filed a motion to compel discovery. The affidavit of IBI's attorney, filed in support of the motion, indicates that counsel for the parties have conferred without success in resolving their discovery impasse. For the reasons set forth below, the motion is granted in part and denied in part.

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party .... For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed.R.Civ.P. 26(b)(1).

(1) Miller's Document Retention Policy

■ IBI seeks a copy of defendant Miller Brewing Co.'s document retention policy, based on the following deposition testimony by Timothy Cochran of Miller:

Q: At some point you received a document from IBI which they proffered to be the five-year business plan, but you said it was really a market overview, is that a fair statement?

. . . .

THE WITNESS: That's what I said, yes.

BY MR. CADE:

Q So when you got what IBI called the five-year business plan and you call the market study, did you ever call up Mr. Judge or Mr. Harvey or sent [sic] them a letter saying, "Guys, this is not a five-year plan, it's a market study?"

. . . .

THE WITNESS: I don't remember.

BY MR. CADE:

Q If you wrote something, would you have kept a draft of it, of the letter? If you wrote a letter to Mr. Judge or Mr. Harvey saying this is not a five-year business plan, would you have kept a draft of that?

A Yes.

. . . .

BY MR. CADE:

Q .... When you send out a document, is your standard procedure to keep a copy of your letters and correspondence?

A Yes.... It varies by correspondence. There's a records retention policy that I follow.

(Cade Aff. filed 6/2/06, Ex. 1 at 131–35.)

IBI characterizes this testimony as Cochran's admission that he may have destroyed documents related to this case based on the document retention policy. IBI says it needs the policy to determine whether additional documents were destroyed.

IBI's characterization of Cochran's testimony is a stretch. Cochran said he did not remember writing to Judge or Harvey and admitted only that *if* he had written a letter he would have saved it, and that his standard procedure is to follow a records retention policy. That is a far cry from Cochran admitting that he may have destroyed documents pertinent to this case. In addition, regardless of whether Cochran did or did not keep a letter that he might have written but cannot remember, IBI has failed to persuade the court that the document retention policy (and, for that matter, the five-year business plan letter that may or may not exist) is relevant to any claim or defense alleged in the pleadings.

Thus, the motion to compel production of the document retention policy will be denied.

(2) Miller Employee Personnel Files

■ In document request number 59, IBI asks for "[a] complete and unredacted copy of the personnel files" for eight Miller employees. (Cade Aff. Ex. 5 Request 59.) Miller objected on relevancy, in particular noting the personal and confidential material in the files regarding salaries, benefits, personal identification numbers, and tax information, all unrelated to the issues in this case. (*Id.*) IBI says it offered a compromise, allowing Miller to redact any salary information or other personal information, but Miller still refuses to provide the files. IBI moves to compel production of the files or to bar the specified employees from being witnesses in the case.

Again, IBI offers no argument as to why these personnel files are relevant to any of the claims or defenses alleged in the pleadings of this case or the subject matter involved in the case. On the other hand, IBI contends that Miller is engaging in gamesmanship and speculates that if IBI requests all "discipline" files for the employees, Miller might have a "reprimand" file instead and deny that a "discipline" files exists. Thus, IBI says, it is unable to identify with more specificity what it wants from the personnel files. The court disagrees. IBI perhaps could have sought (and perhaps other document requests cover) information in the personnel files related to the contracts at issue in this case, operations in India, or, if the employees will testify at trial, matters pertinent to impeachment. But it has not done so, at least not in document request number 59, which is overly broad and seeks documents that may be wholly unrelated to the claims or issues in this case.

(3) Interrogatories Regarding Who Assisted in Answering Discovery Requests

In Interrogatories 28 through 40, IBI asks Miller to identify all persons who provided or assisted in providing responses to IBI's first, second, and third set of requests to admit; IBI's first, second, third, and fourth sets of interrogatories; and IBI's first, second, third, fourth, and fifth sets of requests to produce; as well as all persons involved in the "reasonable investigation" alleged in

¶ 118 of the First Amended Counterclaims. When it responded to the interrogatories, Miller stated that it was refusing to answer Interrogatories 28 through 40 because IBI had exceeded its permitted number of interrogatories, and said it was reserving any other objections.

IBI moves to compel. Civil L.R. 33.1(b) states that for the purpose of counting the number of interrogatories, those inquiring about the names and locations of persons with knowledge of discoverable information or of the existence of documents or evidence are not counted toward the limit. Therefore, Miller no longer relies on that objection. Instead, Miller contends that Interrogatories 28 through 40 are overly burdensome and an abuse of discovery, as they ask Miller "to identify all persons that assisted in answering every discovery question posed by IBI so far. That translates into 464 questions, not 13 questions as disguised in interrogatories 28–40." (Def.'s Resp. in Opp'n filed 6/9/06 at 3–4.) Miller suggests that there is no threat of surprise witnesses, and that its initial disclosure and the discovery process have identified all pertinent individuals.

IBI is not obligated to rely on Miller's representations regarding who it believes to be pertinent witnesses or individuals with relevant information. Civil L.R. 33.1(b)(2) contemplates interrogatories inquiring about persons with knowledge of discoverable information or evidence. Obviously, those persons at Miller or within its control who assisted substantively in preparing responses to interrogatories have knowledge of discoverable information.

While Miller contends that it must go back and review 464 separate questions, the court is relatively confident that review of each and every discovery question or request is unnecessary, and that Miller's attorneys and employees most involved with defending this case know to whom they went when securing the information to respond. The court is unconvinced that, regardless of the number of discovery requests involved, the actual number of persons responding to the discovery requests is very substantial. The court clarifies that not every copy-room employee who saw the discovery responses is covered

by the court's order. Instead, the order covers, for instance, those persons who provided substantive information in preparation of Miller's discovery responses or who have knowledge regarding the existence of responsive evidence.

■ Moreover, in response to an interrogatory, "[a]ll grounds for an objection .... shall be stated with specificity. Any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown." Fed. R.Civ.P. 33(b)(4). Miller's response to these interrogatories included only the objection that the interrogatories exceeded the permitted number. Regardless of Miller's attempt to reserve further objections, it did not meet the requirements of Rule 33(b)(4) and thus waived the present argument.

Thus, the motion to compel will be granted as to these interrogatories.

(4) Miller's Electronic Files

After this case was filed, IBI warned Miller to preserve all electronic documents and evidence pertaining to India, IBI or related persons or entities, and this lawsuit. In its motion to compel, IBI says it then requested production of all stored electronic documents and information regarding how the electronic documents are stored. Miller says it has produced all relevant discovery in hard copy form and that it should not be required to repeat its efforts to give IBI the same items in electronic format. In addition, Miller argues that IBI has asked for but is not entitled to confidential systems-related information encompassing Miller's computers around the world, as it has no relevance to this case and Miller has adequately responded to discovery requests.

■ IBI's motion will be denied. Discovery rules require production of "documents," defined as writings, drawings, graphs, charts, photographs, phonorecords, "and other data compilations from which information can be obtained, translated, if necessary." Fed.R.Civ.P. 34(a). "A party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." Fed.R.Civ.P. 34(c). To the extent that the documents IBI sought in its requests are kept in hard copy in the usual course of business, IBI is not entitled to any other format. To the extent that those documents kept in electronic form have been printed out and organized and labeled to correspond with the document request, again IBI is not entitled to any other format. "[I]f a party produces its electronic information in a hard copy format that mimics the manner in which that information is stored electronically, then that party has not disobeyed Rule 34." *N. Crossarm Co. v. Chem. Specialties, Inc.,* No. 03–C–414–C, 2004 WL 635606, *1 (W.D.Wis. Mar.3, 2004). A party may request information in a specific electronic format, but if it instead simply asks for "documents," adopting the definition in Rule 34(a), production in electronic format is not required. *Id.* at *2.

■ For the most part, IBI asked for "documents" or for policies and procedures or information, without specification of the format. (Cade Aff. Ex. 2, Requests 6–12, 15–22, 25.) Thus, production in hard copy format was responsive. As for IBI's demands for information on Miller's electronic storage systems, the court agrees that IBI is not entitled to the information. As the relevant discovery documents appear to have been provided in hard copy format, information regarding Miller's computer systems is unnecessary and irrelevant. Moreover, even if Miller had produced some items in electronic format, IBI's discovery request is overly broad and burdensome, incorporating much irrelevant material. For instance, as one example, IBI asked Miller to describe in detail the configuration of its entire computer system since January 1, 1998, including each brand and model of computer, whether desktop or laptop, the amount of memory and capacity of the hard disk, the type and version of operating system, and the brand and model of all peripheral devices. (Cade Aff. Ex. 3 Interrog. 7.) Such an interrogatory on a company the size of Miller is astounding in the context of a contract case. (*See also* Cade Aff. Ex. 2 Request 25 ("Produce any and all documents and things related to net-

works or groups of connected computers that allow people to share information and equipment . . . .").) These requests have no relevance to the claims in this case.

IBI relies on *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y.2003), regarding the preservation of evidence in electronic format. However, that case involved spoliation of evidence—the defendant had failed to retain certain e-mails and backup tapes of the computer system. The court discussed the defendant's inadequate production and its negligent and grossly negligent destruction of evidence. Here, IBI has nothing but speculation regarding whether Miller has failed to produce what it is required to produce, and no evidence of spoliation has been presented on the record before the court.

(5) Future Motions to Compel, if Any

Finally, the court notes how the parties have stretched the limits of Civil L.R. 7.4. The rule says expedited motions and responses "must not exceed 3 pages." Civil L.R. 7.4(b). Both parties have separated the case caption and attorney signatures onto separate pages, creating five pages (notwithstanding that only three pages contain text). In addition, the practice of placing arguments or citations in footnotes (defendant's three pages of text include seven footnotes) may be considered a way to squeeze more text in.

 From now on the caption and signatures count and must be included as part of the permitted number of pages. Moreover, substantive arguments or citations placed in footnotes may be disregarded by the court.

The court clarifies for future reference that it will not issue briefing schedules for Civil L.R. 7.4 motions or allow reply briefs on Civil L.R. 7.4 motions as Judge Curran did. The time limits in Civil L.R. 7.4 apply automatically unless otherwise altered by the court.

Therefore, for the reasons set forth above,

IT IS ORDERED that the motion to compel is granted as to the interrogatories asking who assisted in answering discovery requests, but is otherwise denied.

The outcome of this motion will not be a basis for extending the discovery deadline.